UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY BURNETT, | ) |
|       Petitioner, | ) ) ) |
|       v. | ) ) Case No. 1:21-cv-02007-TWP-TAB |
| PRETORIUS, | ) ) ) |
|       Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Petition for Writ of Habeas Corpus, (Dkt. 1), filed by Petitioner Tony Burnett ("Mr. Burnett"). In February 2021, officers at Plainfield Correctional Facility suspected that Mr. Burnett was intoxicated and punished him through the prison disciplinary system. His Petition for a writ of habeas corpus asserts numerous challenges to the hearing officer's decision. For the reasons discussed below, Mr. Burnett's Petition is **denied**.

**I.   OVERVIEW**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. THE DISCIPLINARY PROCEEDING

On February 5, 2021, Sergeant T. Bradley saw Mr. Burnett and believed he was intoxicated. (Dkt. 10-1.) Sergeant Bradley documented his observations in the following Report of Conduct ("conduct report") report:

> On February 5, 2021[,] at approximately 7:40PM, I, Sergeant T. Bradley[,] was sitting in South Dorms Sergeants Office when one of my unit officers entered and informed me of a possible intoxicated offender. I exited the office and observed Offender Burnett, Tony #188066 (G1-1L) staggering around in the G/H hallway. Officer Robinson began clearing the lobby area of offenders as Officer Bankole and I escorted Offender Burnett to the lobby. Offender Burnett was clearly intoxicated. Offender Burnett was confused and unable to walk or stand on his own. He was then placed in mechanical restraints and escorted to HSU by walk staff to be evaluated and then placed in ISO cell 155.

*Id.*

A medical record states that Nurse Kalyn Corrice ("Nurse Corrice") visited with Mr. Burnett at 7:46 P.M. on February 5, 2021, although the document was not completed until 5:56 AM on February 26, 2021. (Dkt. 1-3 at 3.) According to this record, Mr. Burnett was alert and oriented but exhibited slurred speech, delayed thought processes, red eyes, and dilated pupils. *Id.* Nurse Corrice also noted that an officer reported that Mr. Burnett vomited before moving to the medical unit. *Id.* Mr. Burnett was charged with consuming intoxicants in violation of Code 231B. (Dkt. 10-2.)

The screening officer emailed Nurse Corrice on February 24, 2021, requesting additional information on Mr. Burnett's medical condition. (Dkt. 10-5.) Mr. Burnett suffers from Myasthenia Gravis, a neurological condition "characterized by weakness and rapid fatigue of any of the muscles under . . . voluntary control." (Dkt. 1-4 at 1-2, 5; Dkt. 10-6.) Symptoms include:

- muscle weakness;
- drooping eyelids;
- double vision;
- impaired speech that is soft or nasal sounding;
- difficulty swallowing, chewing, or changing facial expressions;
- impaired walking due to weak legs; and

2

- difficulty holding up the head due to neck weakness.

*Id*. Nurse Corrice opined that Mr. Burnett's condition on February 2, 2021 reflected intoxication rather than symptoms of Myasthenia Gravis:

> He was definitely intoxicated. He had had [sic] slurring of speech and delayed thought process, inability to walk, his pupils were extremely dilated, and it was stated he had vomited before coming to HSU. The only thing that would be inline with side effects of his meds is the nausea leading to vomiting. All the others are not side effects.

Dkt. 10-5.

At a hearing on February 25, 2021, Mr. Burnett stated that he was not intoxicated on February 2, 2021, and that his behavior was the result of his medical condition. (Dkt. 10-4.) Mr. Burnett states that he attempted to present information about his illness to the hearing officer, but the hearing officer refused to review it. (*See* Dkt. 1 at 4.)

The hearing officer found Mr. Burnett guilty of consuming intoxicants based on the conduct report and Nurse Corrice's assessment. (Dkt. 10-4.) Mr. Burnett was sanctioned with a loss of earned credit time and a demotion in credit-earning class. *Id.* His administrative appeals were unsuccessful. (Dkts. 10-7, 10-8.)

### III.  ANALYSIS

Mr. Burnett raises several challenges to the sufficiency of the evidence against him and his right to present evidence in his defense. These challenges fail for the reasons discussed below.[1]

**A.    Sufficiency of the Evidence**

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence"

---

[1] Mr. Burnett also challenges aspects of his administrative appeals. However, there is no due process right to an administrative appeal, so no error in that process can justify habeas relief. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff* 418 U.S. at 556. The due process rights set forth in *Wolff* do not include any safeguards during an administrative appeal—even a right to appeal at all. And the lower courts may not expand the procedural guarantees set forth in *Wolff*. *See White v. Indiana Parole Bd.,* 266 F.3d 759, 768 (7th Cir. 2001).

3

standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

"Some evidence" supports the hearing officer's determination that Mr. Burnett consumed intoxicants in violation of Code 231B. According to the conduct report, an officer contacted Sergeant Bradley and informed him of "a possible intoxicated offender." (Dkt. 10-1.) Sergeant Bradley interacted with Mr. Burnett and determined that he was intoxicated because he was staggering, confused, and unable to walk or stand on his own. *Id.* Nurse Corrice's examination notes document slurred speech, delayed thought process, red eyes, dilated pupils, and inability to walk. (Dkt. 1-3 at 3.) Based on those observations, she opined that he "was definitely intoxicated." (Dkt. 10-5.) This evidence clears the "meager threshold" of sufficiency required to satisfy due process. *Jones*, 637 F.3d at 849.

Mr. Burnett challenges the reliability of much of the evidence against him. He denies that he vomited and notes that, if he had, additional reports not in the record would document the cleanup. (Dkt. 1 at 6–7, Dkt. 11 at 2.) He states that Nurse Corrice never took his vitals as she

4

documented in her treatment notes, and he emphasizes the delay between the time of the incident and the time she logged those notes. (Dkt. 1 at 6; Dkt. 11 at 3.) He states that his pupils were not dilated and argues that dilated pupils are evidence of "hard drug use" rather than lesser intoxicants. (Dkt. 1 at 6; Dkt. 11 at 3.) Finally, he notes that he was never subjected to any blood, breath, or urine testing to verify whether he consumed intoxicants. (Dkt. 1 at 4.)

These arguments merely attack the way the hearing officer weighed the evidence and claim that additional, corroborative evidence was necessary. However, the conduct report and medical evidence include extensive evidence that Mr. Burnett was intoxicated. Additional evidence was not required to meet the "some evidence" standard. The Court cannot dictate a different outcome by weighing the evidence differently or by demanding more evidence than due process requires. *Rhoiney*, 723 F. App'x at 348. Some evidence supported the hearing officer's decision, and that ends the inquiry. *Jones*, 637 F.3d at 849.

**B.     Denial of Evidence**

Mr. Burnett argues that the prison staff wrongly denied his requests to provide blood, breath, and urine tests to prove that he did not consume intoxicants. (Dkt. 1 at 4.) But "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). The prison staff's failure or refusal to conduct tests did not deprive Mr. Burnett of due process.

Mr. Burnett also argues that the hearing officer refused to consider literature about Myasthenia Gravis. Due process affords an inmate in a disciplinary proceeding a limited right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present *material, exculpatory* evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is

5

exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *see Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). As the petitioner, Mr. Burnett faces the burden of establishing that the evidence was material and exculpatory. *See Piggie*, 344 F.3d at 678 (Petitioner did not "explain how [the requested witness's] testimony would have helped him," so "the district court properly denied relief" on petitioner's claim that he was wrongfully denied a witness.).

The medical literature Mr. Burnett wished to present does not undermine the hearing officer's finding of guilt or raise a reasonable probability of a different outcome. The literature notes various symptoms of Myasthenia Gravis, but only one—impaired walking—was documented in the conduct report or medical records from the date of the incident. Meanwhile, the conduct report and medical evidence note several symptoms—slurred speech, delayed thought process, dilated pupils, and vomiting—that the literature does not associate with Myasthenia Gravis. (*Compare* Dkt. 1-4 *to* Dkts. 1-3, 10-1.) Had the hearing officer read Mr. Burnett's literature, almost none of it would have suggested that his behavior was attributable to Myasthenia Gravis. As such, there is little reason to expect the hearing officer would have reached a different conclusion.

### IV.  CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Burnett's Petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Burnett's Petition For Writ of Habeas Corpus (Dkt. [1]) is **DENIED** and the action **DISMISSED with prejudice.**

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 10/22/2021

DISTRIBUTION:

Tony Burnett, #188066
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 Moon Road
Plainfield, Indiana  46168

David Corey
INDIANA ATTORNEY GENERAL'S OFFICE
david.corey@atg.in.gov

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL'S OFFICE
natalie.weiss@atg.in.gov

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana